IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYSON ROMERO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 21-1124-RGA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendant's Motion to Dismiss or Stay and Compel Arbitration (D.I. 30). I heard oral argument on December 21, 2022. As announced from the bench, I recommend that Defendant's motion be GRANTED and that the case be stayed pending arbitration.

**I.   DISCUSSION**

My report and recommendation on Defendant's motion was announced from the bench at the conclusion of the hearing as follows:

> I'm prepared to give my report and recommendation on Defendant's motion to dismiss or to stay and compel arbitration. (D.I. 30.) I want to emphasize before I announce my recommendation that while I'm not issuing a separate written opinion, we have followed a full and thorough process for resolving the pending motion. The motion was fully briefed on both sides. I also heard oral argument today. Everything submitted and argued has been carefully considered. If I do not mention a particular argument or case cited by a party, it's not because I did not consider it. I will refer only to the cases and arguments raised by the parties to the extent necessary to resolve the pending motion. For the reasons I'm about to state, I recommend granting Defendant's request to stay the proceedings and compel arbitration.

I assume the following facts alleged in the complaint to be true for the purpose of resolving the pending motion. Defendant Center for Excellence in Higher Education, Inc. is a Delaware corporation with headquarters in Salt Lake City, Utah. (D.I. 1 ¶ 8.) Plaintiff Tyson Romero worked for Defendant at its headquarters for seven years. (*Id.* ¶¶ 7, 8.) On or about August 2, 2021, Defendant terminated Plaintiff and about 300 other employees from its Salt Lake City and Phoenix locations without notice. (*Id.* ¶¶ 1, 2, 7, 11.) On the same day, Plaintiff filed his complaint in this action. Plaintiff's complaint is styled, "Class Action Complaint for Violation of WARN Act, 29 U.S.C. § 2101, *et seq*." In it, Plaintiff purports to be bringing an action on behalf of himself and a class of similarly situated former employees for monetary relief under the WARN Act. (*Id.* ¶¶ 13, 23–33.)

"The purpose of the WARN Act is to protect workers by obligating employers to give their employees advance[] notice of mass layoffs or plant closings."[1] In general terms, it says that covered employers must provide 60 days advance written notice of a mass layoff or plant closing to each affected employee or their union representative and to the state and local government.[2] Section 2104(a)(1) says that employers are liable to each aggrieved employee for back pay and benefits for each day notice is not provided, up to a maximum of 60 days.[3] Section 2104(a)(3) says that employers are subject to civil penalties for failure to provide notice to a local government.[4] Section 2104(a)(5) specifies who may bring an enforcement suit and where they may bring it: it provides that "[a] person seeking to enforce such liability, including a representative of employees or a unit of local government aggrieved under paragraph (1) or (3), may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business."[5]

---

[1] *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 239 (3d Cir. 2008), *as amended* (Oct. 27, 2008).

[2] 29 U.S.C. § 2102(a).

[3] *Id.* § 2104(a)(1).

[4] *Id.* § 2104(a)(3).

[5] *Id.* § 2104(a)(5).

The term "representative" is defined elsewhere in the act and refers to labor organizations, *i.e.*, union representatives.[6]

Plaintiff's complaint refers to [Federal Rule of Civil Procedure] 23 and expressly requests certification of a class made up of employees that were terminated by Defendant within 90 days of August 2, 2021. (D.I. 1 ¶¶ 13–22.) Defendant has not yet served a responsive pleading. On January 6, 2022, the parties jointly requested a stay so that they could pursue mediation. (D.I. 14.) The parties weren't able to resolve the case through mediation, and the Court lifted the stay on August 2, 2022. (D.I. 26.)

On August 17, 2022, Defendant filed the pending motion, which seeks to stay or dismiss the case so the parties can pursue resolution of this dispute in arbitration. (D.I. 30.) Defendant submitted with its motion a copy of a two-page "Mediation and Arbitration Agreement" signed by Plaintiff when he started working for Defendant in 2014. That document is set forth as Exhibit A to D.I. 32, and I will refer to it as the "Agreement."

The Agreement outlines a three-step dispute resolution procedure that, by its terms, applies to "any and all disputes, conflicts, problems, controversies, or claims of any kind without exception arising from or connected to employment with the Company." (D.I. 32, Ex. A.) In the first step, the employee must take his complaint internally up the chain of command at the company. (*Id.*) In the second step, the parties must attempt resolution of the dispute in mediation. (*Id.*)

Defendant's motion concerns the Agreement's third step. The Agreement states the following, in pertinent part:

> **Step Three**: Any and all disputes, conflicts, problems, controversies, or claims of any kind arising from or connected to employment with the Company, shall be submitted to binding arbitration under the substantive and procedural requirements of the Federal Arbitration Act, under the rules of the American Arbitration Association. . . . All determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a Court. . . .

---

[6] *Id.* § 2101(a)(4); *see also United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 548 (1996); *In re APA Transp.*, 541 F.3d at 240.

> Any dispute or claim shall be brought solely in that party's individual capacity and not as a plaintiff or class member in any purported class action, representative proceeding, mass action or consolidated action.

(*Id.*)

Defendant contends, and Plaintiff has not disputed, that the Court should review the motion to compel arbitration under the same standard applicable to motions to dismiss under Rule 12(b)(6). Defendant also contends, and Plaintiff has not disputed, that the copy of the Agreement submitted to the Court is authentic and that the Court may properly consider it. Because Plaintiff has not put the Agreement to arbitrate at issue, nor has Plaintiff identified any other disputed facts relative to the disposition of Defendant's motion, the Court will proceed to assess it under the 12(b)(6) standard.[7]

"The Federal Arbitration Act (FAA) reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'"[8] Its primary substantive provision says that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract . . . ."[9] It requires that the Court, "upon being satisfied" that an issue involved in the suit or proceeding is referable to arbitration under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[10] It also authorizes courts to issue

---

[7] *See, e.g., Parker v. Briad Wenco, LLC*, No. 18-04860, 2019 WL 2521537, at *5 (E.D. Pa. May 14, 2019) ("If a party attaches an authentic arbitration agreement in its motion to compel, the Court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." (cleaned up)), *report and recommendation adopted*, 2019 WL 2516059 (E.D. Pa. June 18, 2019).

[8] *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

[9] 9 U.S.C. § 2.

[10] 9 U.S.C. § 3.

orders compelling arbitration when one party has failed to comply with an arbitration agreement.[11]

To determine whether [] an issue in a suit or proceeding is referable to arbitration within the meaning of § 2, courts "must consider two gateway questions: (1) whether the parties have a valid arbitration agreement at all (i.e., its enforceability), and (2) whether a concededly binding arbitration clause applies to a certain type of controversy (i.e., its scope)."[12]

Defendant argues, and Plaintiff does not dispute, that the Agreement is a valid arbitration agreement at least as to some disputes that may arise between the parties. Defendant further points out, and Plaintiff agreed during the argument today, that to the extent that Plaintiff has an individual WARN claim, such a claim falls within the scope of the Agreement.[13] What's more, Plaintiff acknowledged in his brief that the Agreement has an express class/representative action waiver and that class action waivers are generally enforceable, even for federal statutory claims. (D.I. 37 at 8, 16.) In other words, Plaintiff recognizes that the plain terms of the Agreement prevent him from pursuing a class arbitration of his and similarly situated employees' individual WARN claims.

In light of all that, Defendant says this case should be stayed so that arbitration can be had in accordance with the terms of the Agreement. I agree. That outcome should have been simple to reach. Unfortunately, untangling Plaintiff's arguments against sending the case to arbitration wasn't so simple. I'll briefly summarize what they are and my responses to them.

Plaintiff's main argument is that the arbitration agreement is unenforceable with respect to his WARN Act claim because it operates as a "waiver" of a substantive remedy. (D.I. 37 at 2, 6–8.) The argument goes like this. First, Plaintiff says that, notwithstanding the express reference to a class action and Rule 23 in his complaint he is not trying to bring a class action made up of individual employee claims under the WARN Act. According to

---

[11] 9 U.S.C. § 4.

[12] *Remicade,* 938 F.3d at 519 (cleaned up).

[13] Defendant accurately points out, however, that even if there were a dispute as to whether the scope of the Agreement covered an individual WARN claim, that dispute should be resolved by the arbitrator, as the parties agreed to arbitrate arbitrability. (*See* D.I. 32, Ex. A ("All determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court.").)

5

Plaintiff, what he is actually intending to bring is a "representative action." (*See* D.I. 37 at 8.) Plaintiff says that his right to bring a representative action is provided by 29 U.S.C. § 2104(a)(5), which, as a reminder, says that a person seeking to enforce such liability—*i.e.*, the liability to employees for backpay and benefits under paragraph (1) or liability to the local government under paragraph (3)—including a representative of employees or a unit of local government aggrieved under paragraph (1) or (3), may sue either for such person or for other persons similarly situated, or both, in federal court.[14] Plaintiff concedes that the reference to a representative in that paragraph refers only to the union (D.I. 37 at 2), and Plaintiff does not argue that he is acting for the union. Instead, Plaintiff focuses on the statutory language that permits an individual employee to sue for either "such person or for other persons similarly situated" as the source of his alleged substantive right to bring a representative action.

Plaintiff then cites the Supreme Court's opinion in *Viking River Cruises*, and other cases, for the proposition that the FAA does not require a court to enforce a provision in an arbitration agreement that operates as a waiver of a substantive right provided by a statute.[15] And because everyone agrees that the Agreement expressly prohibits Plaintiff from pursuing class/representative action claims in arbitration, Plaintiff argues that it operates as a waiver of his substantive right to bring a representative claim and should not be enforced.

I reject that argument, for many reasons. For one thing, as Defendant points out, the parties' Agreement delegates all disputes over the enforceability of the Agreement to the arbitrator.[16] To be clear, while Plaintiff has raised challenges to the enforceability of the class/representative action waiver in the Agreement, Plaintiff has never specifically challenged the validity of the parties' agreement to delegate arbitrability to the arbitrator, nor has he persuasively explained why the Court should not enforce the parties' express agreement to arbitrate any disputes the parties have over the

---

[14] 29 U.S.C. § 2104(a)(5).

[15] *See, e.g., Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919, 1924 (2022).

[16] *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016) (explaining that the presumption that courts should determine arbitrability can be overcome with "express contractual language unambiguously delegating the question of arbitrability to the arbitrator"); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 187 (3d Cir. 2010) (acknowledging that parties can contract to "arbitrate arbitrability").

enforceability of the Agreement, which would seem to include their dispute over the enforceability of the class/representative action waiver.[17] That alone is enough to grant Defendant's motion and send the case to arbitration.[18]

But even if this Court did consider Plaintiff's contention that the class/representative action waiver is unenforceable because it operates as a prospective waiver of a right to pursue a statutory remedy, he cited no support for the proposition that § 2104(a)(5) provides a substantive remedy to an employee that is different than an employee's right to an individual remedy under § 2104(a)(1). Section 2104(a)(5) merely says the plaintiff can enforce his and other individual employees' rights to such remedy provided by § 2104(a)(1) by suing on behalf of himself and other employees. It does not alter the nature of the individual plaintiff's substantive remedy under the statute, which is merely to recover the back pay and benefits owed to him under § 2104(a)(1).

Plaintiff suggests that the Supreme Court's decision in *Viking River Cruises* supports his argument that § 2104(a)(5) gives him a substantive right to bring a representative claim, but that case is inapposite for a number of reasons, not the least of which is that the California state statute at issue there created a type of *qui tam* action that allowed an employee plaintiff to sue as an agent or proxy of the state, and the code provisions enforced through the statute established public duties that were owed to the state, not private rights belonging to employees in their individual capacities.[19] Section 2104(a)(5) bears no resemblance to the representative claim provision in *Viking River*. Section 2104(a)(5) merely permits an individual plaintiff to pursue a class/representative action to assert his and other employees' individual rights to the statutory remedies provided in § 2104(a)(1).

Further supporting my conclusion that § 2104(a)(5) does not provide a non-waivable substantive right to some type of representative action is the fact that its reference to actions for or on

---

[17] Under the FAA, a delegation provision is itself "an additional, antecedent [arbitration] agreement," and the FAA "operates on this additional arbitration agreement just as it does any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

[18] *Id.* at 72 (holding that when a litigant challenges the enforceability of an arbitration agreement with a delegation clause, the challenge must be submitted to the arbitrator unless the plaintiff has lodged a specific objection to the delegation clause itself).

[19] 142 S. Ct. at 1914–15.

behalf of others similarly situated is similar to the portion of the Age Discrimination and Employment Act ("ADEA") that expressly permits collective actions, and the Supreme Court has held that the right to bring a collective action under ADEA is a procedural right that can be waived in an arbitration agreement.[20]

During oral argument today, Plaintiff suggested that the WARN Act gave him a right to sue on behalf of other individuals, which distinguishes it from the collective action procedure set forth in ADEA where plaintiffs are required to opt in. Maybe so, but that does not mean that the WARN Act creates a substantive right. Plaintiff still hasn't explained how the WARN Act's reference to some type of representative action creates a substantive right as opposed to a procedural right, nor has he provided any authority suggesting that it is substantive. And I don't think it is. The class action procedure set forth in Rule 23 talks about suing "on behalf of" members of a class, and that is a procedural right that can be waived in an arbitration agreement.[21]

Plaintiff next suggests that requiring employees to litigate their WARN act claims individually would contravene the policies behind the WARN Act. Plaintiff points out that the Act contemplates it will be primarily enforced by employees and that it is not economically feasible for employees to litigate their claims individually. The problem with that argument is that federal statutory claims are subject to the FAA, which requires enforcement of arbitration agreements, including class action waivers, unless the FAA's mandate has been overridden by a contrary congressional command. There is no such contrary congressional command here. Plaintiff contends that the "native substantive statute" (by which I assume he means § 2104(a)(5)) evinces a congressional intent to preclude a waiver of class or representative action procedures. I disagree. As already pointed out, § 2104(a)(5) contains text similar to the collective action provision in the ADEA, and the law is clear

---

[20] *Compare* 29 U.S.C. § 2104(a)(5) (WARN) ("[A] person seeking to enforce such liability . . . may sue either for such person or for other persons similarly situated") *with* 29 U.S.C. § 216(b) (ADEA) ("An action to recover the liability prescribed in the preceding sentences may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); *see Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 237 (2013) ("In *Gilmer [v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31–32 (1991)], we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions.").

[21] *Italian Colors*, 570 U.S. at 234 ("Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights.").

that the right to bring a collective action under ADEA can be waived in an arbitration agreement.

To conclude, I agree with Defendant that the case is going to arbitration. If Defendant is right that the parties agreed to arbitrate the enforceability of the class/representative action waiver, this case is going to arbitration. But even if Plaintiff is right that the Court should assess the enforceability of the class/representative action waiver, this is going to arbitration because I would reject Plaintiff's argument that the waiver is unenforceable.

Lastly, I will address Plaintiff's argument that Defendant waived his right to enforce the arbitration agreement altogether.[22] According to the Supreme Court in its recent case *Morgan v. Sundance, Inc.*, waiver "'is the intentional relinquishment or abandonment of a known right.'"[23] "To decide whether waiver has occurred, the court focuses on the actions of the person who held the right."[24] *Sundance* abrogated the Third Circuit's longstanding *Hoxworth* test for assessing whether a party waived its right [to arbitrate] by engaging in the litigation before switching course and asking for arbitration.[25]

This case is not an appropriate occasion to engage in the philosophical exercise of figuring out how much of *Hoxworth* survived *Sundance* because there is no basis on this record to conclude that Defendant has acted inconsistent with its right to have the dispute resolved in arbitration as opposed to court. Plaintiff filed his complaint in August 2021. Defendant has never answered the complaint. In January 2022, the parties filed a joint motion to stay proceedings, and that motion expressly stated that "[p]rior to the commencement of this litigation, Plaintiff had executed a Mediation and Arbitration Agreement with Defendant, which, Defendant

---

[22] As a footnote, neither side argues that the question of waiver was delegated to the arbitrator. Accordingly, I will address it. *Cf. Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217 (3d Cir. 2007) (observing that "our Court has long decided questions of waiver based on litigation conduct instead of referring the issue to an arbitrator").

[23] 142 S. Ct. 1708, 1713 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

[24] *Id.*

[25] *Compare Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir. 1992) ("[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived . . . .") *with Sundance*, 142 S. Ct. at 1714 ("[T]he usual federal rule of waiver does not include a prejudice requirement, [and] prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA.").

contends, precludes Plaintiff's litigation of his claims against Defendant before this Court at this time." (D.I. 14 ¶ 1.) The parties then proceeded with mediation (D.I. 21, 23, 25), which was not inconsistent with the Agreement, as it required the parties to attempt mediation before going to arbitration. The Court lifted the stay on August 2, 2022, and Defendant filed its motion to compel two weeks later. (D.I. 26, 30.) Plaintiff's contention that Defendant waived its right to arbitration through litigation conduct is meritless.

In the section of his brief dealing with waiver, Plaintiff says he is concerned about Defendant's ability and intention to pay arbitration fees, and he requests discovery into Defendant's finances and/or an order requiring Defendant to post bond with the Court. Plaintiff has cited no authority supporting either of those requests, and they should be denied. The parties contracted to have their disputes resolved in arbitration, and the FAA requires the Court to stay the case and send the parties to arbitration.

## II.   CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion (D.I. 30) be GRANTED and that the case be stayed pending arbitration.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 12, 2023

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE